PEOPLE v FROHRIEP

Docket No. 223755. Submitted May 8, 2001, at Grand Rapids. Decided
October 12, 2001, at 9:00 A.M. Leave to appeal sought.

Larry E. Frohriep was convicted following a bench trial in the St.
Joseph Circuit Court, James P. Noecker, J., of possession with
intent to deliver marijuana. The defendant appealed, claiming that
the trial court erred in denying his pretrial motion to suppress evi-
dence obtained by the police through the use of the "knock and
talk" procedure, i.e., a law enforcement procedure in which the
police, who possess some information that they believe warrants
further investigation, but that is insufficient to constitute probable
cause for a search warrant, approach the person suspected of
being engaged in illegal activity at the person's residence, identify
themselves as police officers, and request consent to search for the
suspected illegality or illicit items.

The Court of Appeals held:

1. The knock and talk procedure employed by the police in this
case does not violate guarantees against unreasonable searches
and seizures as provided in US Const, Am IV and Const 1963, art 1,
§ 11. The mere fact that officers initiate contact with a citizen at
the citizen's home does not implicate constitutional protections. It
is unreasonable to think that simply because a person is at home
that person is free from having the police come to the person's
home and initiate a conversation. The fact that the motive for the
contact is an attempt to secure permission to conduct a search
does not change that reasoning.

2. The police, in identifying themselves, telling the defendant that
they had been informed that the defendant had controlled sub-
stances on his property, and asking the defendant's permission to
"look around," did not seize the defendant within the meaning of
the Fourth Amendment inasmuch as there is no indication that the
defendant believed that he was not free to leave.

3. The trial court did not err in finding that, under the circum-
stances presented in this case, the defendant had consented to a
search of his premises in any area where controlled substances
might be found.

4. The defendant's claim that the officers prevented him from having the opportunity to revoke his consent to the search is without merit. The claim was raised for the first time on appeal and is thus unpreserved, and the defendant has not established outcome-determinative plain error.

Affirmed.

1. SEARCHES AND SEIZURES — KNOCK AND TALK PROCEDURE — CONSTITUTIONAL LAW.

The "knock and talk" procedure—in which the police, who possess some information that they believe warrants further investigation, but that is insufficient to constitute probable cause for a search warrant, approach the person suspected of being engaged in illegal activity at the person's residence, identify themselves as police officers, and request consent to search for the suspected illegality or illicit items—does not violate constitutional guarantees against unreasonable searches and seizures (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — SEIZURES OF PERSONS — CONSTITUTIONAL LAW.

A person whose liberty has been restrained by a police officer has been seized for purposes of the constitutional guarantees against unreasonable searches and seizures if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that the person was not free to leave (US Const, Am IV; Const 1963, art 1, § 11).

3. SEARCHES AND SEIZURES — WARRANT REQUIREMENT — CONSENT EXCEPTION — CONSTITUTIONAL LAW.

The consent exception to the constitutional requirement of a search warrant allows a search when consent is unequivocal, specific, and freely and intelligently given (US Const, Am IV; Const 1963, art 1, § 11).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jeffrey C. Middleton*, Prosecuting Attorney, and *Frank J. Machnik*, Special Assistant Prosecutor, for the people.

*Joseph J. Jerkins*, for the defendant.

Before: COLLINS, P.J., and HOEKSTRA and GAGE, JJ.

HOEKSTRA, J. After a bench trial, the trial court convicted defendant of possession with intent to deliver

marijuana, MCL 333.7401(2)(d)(iii), and sentenced him to serve six months in jail.[1] On appeal as of right, defendant challenges the constitutionality of the police technique and of the search that yielded the evidence used to convict him. Defendant argues that the "knock and talk" procedure that the police employed is unconstitutional, and even if it is not, the search was unreasonable because defendant did not give consent. We affirm.

Before trial, the trial court heard defendant's motion to suppress the evidence that the police seized after approaching defendant on his property and asking to "look around." At the suppression hearing, the police officers involved in the investigation and defendant testified.[2] The officers' testimony revealed that they had information that defendant may have had controlled substances on his property. Because the information was not sufficient to obtain a search warrant, they opted to employ a knock and talk procedure. The officers described the procedure as one where they go to a suspect's residence, engage the individual in a conversation, and attempt to obtain consent to conduct a search.

In this case, the officers went to defendant's residence and two of them encountered defendant in an open area near a pole barn. The two officers identified themselves, told defendant that they had information that defendant might have controlled substances on his property, and requested permission to conduct a search. Exactly how the officer phrased the request and what level of consent defendant gave were dis-

---

[1] The trial court stayed defendant's sentence pending this appeal.

[2] One of the officers testified by the admission by stipulation of his preliminary examination testimony.

puted at the hearing. However, it was not disputed that after this initial encounter the officers entered the pole barn and one officer looked around while the other officer remained with defendant to obtain some additional background information. A few minutes later, the officer looking around the pole barn yelled, "Bingo." Defendant and the other officers went to where that officer was searching and saw that he had located in a freezer what appeared to be several pounds of marijuana. Defendant stated that the marijuana was for his personal use. Next, one of the officers said to defendant that he wanted to look in a trailer. Defendant indicated that it was locked and he would have to get the key. After defendant retrieved the key, the officer entered the trailer and discovered scales. Defendant indicated that the scales were used for weighing marijuana. At that point, defendant said something to the effect of "Wait, wait, just a minute," and the officers stopped the search. Then, one of the officers drafted a written consent to search form and presented it to defendant, but he refused to sign it. Thereafter, the officers obtained a search warrant on the basis of what they had observed before defendant stopped the search.

Months after the hearing, the trial court issued a lengthy written opinion denying defendant's motion to suppress. The trial court declined defendant's invitation to hold that the knock and talk procedure that the police used was unconstitutional. Further, the trial court held that defendant had consented to the search as conducted by the police officers. In its ruling, the trial court made extensive findings regarding the disputed factual issues. The trial court found that defendant's consent was voluntary, not coerced, that

defendant placed no limitation on the scope of the search, and that the knock and talk procedure was neither abusive per se nor inherently unconstitutional. Thereafter, defendant waived his right to a jury trial. Following a bench trial, defendant was convicted of possession with intent to deliver marijuana.

On appeal, defendant first challenges the trial court's ruling that the knock and talk procedure that the police used in this case is constitutional. Initially, we note that defendant does not specify whether his challenge to the constitutionality of the knock and talk procedure is under the Michigan Constitution or the United States Constitution. However, this lack of information does not affect our analysis. "Both the United States and the Michigan Constitutions guarantee the right against unreasonable searches and seizures." *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000), citing US Const, Am IV, Const 1963, art 1, § 11, and *In re Forfeiture of $176,598*, 443 Mich 261, 264-265; 505 NW2d 201 (1993); see also *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). Absent a compelling reason to impose a different interpretation, the Michigan Constitution is construed to provide the same protection as that secured by the Fourth Amendment. *People v Levine*, 461 Mich 172, 178; 600 NW2d 622 (1999). We review constitutional questions de novo. *People v Conat*, 238 Mich App 134, 144; 605 NW2d 49 (1999).

Defendant frames his argument challenging the constitutionality of the knock and talk procedure by comparing this investigative tool to other areas of search and seizure law and by making policy arguments, all with a view toward undermining the reasonableness of allowing the police to utilize this tech-

nique. In particular, defendant argues that the special sanctity of the home and the lack of established procedures renders any knock and talk investigation unreasonable. We find these arguments unpersuasive because none of them addresses the use of this investigative procedure within a proper constitutional framework.[3]

Generally, the knock and talk procedure is a law enforcement tactic in which the police, who possess some information that they believe warrants further investigation, but that is insufficient to constitute probable cause for a search warrant, approach the person suspected of engaging in illegal activity at the person's residence (even knock on the front door), identify themselves as police officers, and request consent to search for the suspected illegality or illicit items. See, e.g., *United States v Hardeman*, 36 F Supp 2d 770, 777 (ED Mich, 1999); *State v Smith*, 346 NC 794, 796; 488 SE2d 210 (1997); *United States v Zertuche-Tobias*, 953 F Supp 803, 829 (SD Tex, 1996). From our research, it appears that Michigan appellate courts have not addressed the constitutionality of police use of the knock and talk procedure.

We decline defendant's request to hold that the knock and talk procedure is unconstitutional because defendant points to no binding precedent, nor have we found any, prohibiting the police from going to a residence and engaging in a conversation with a person. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); more specifically, see *State v Ferrier*, 136 Wash 2d 103, 109-110; 960 P2d 927 (1998);

---

[3] Contrary to defendant's suggestion, we do not find the investigative knock and talk procedure sufficiently similar to the care-taking function of an inventory search to make a viable comparison.

*Zertuche-Tobias, supra.* We conclude that in the context of knock and talk the mere fact that the officers initiated contact with a citizen does not implicate constitutional protections. It is unreasonable to think that simply because one is at home that they are free from having the police come to their house and initiate a conversation. The fact that the motive for the contact is an attempt to secure permission to conduct a search does not change that reasoning. We find nothing within a constitutional framework that would preclude the police from setting the process in motion by initiating contact and, consequently, we hold that the knock and talk tactic employed by the police in this case is constitutional.[4]

That is not to say, however, that the knock and talk procedure is without constitutional implications. Anytime the police initiate a procedure, whether by search warrant or otherwise, the particular circumstances are subject to judicial review to ensure compliance with general constitutional protections. Accordingly, what happens within the context of a knock and talk contact and any resulting search is certainly subject to judicial review. For example, a person's Fourth Amendment right to be free of unreasonable searches and seizures may be implicated where a person, under particular circumstances, does not feel free to leave or where consent to search is coerced. Thus, whenever the procedure is utilized, ordinary rules that govern police conduct must be

---

[4] We note that when utilizing the knock and talk procedure, the police are "merely asking for permission to search a person's home, recognizing and risking that a refusal would not only alert the suspect that he is being watched but would quite likely leave the police empty handed." Swingle & Zoellner, *"Knock and talk" consent searches: If called by a panther, don't anther,* 55 J Mo B 25 (1999).

applied to the circumstances of the particular case. Consequently, we review the circumstances of this case against general protections guaranteed by the constitution.

The Fourth Amendment protects people from unreasonable searches and seizures.[5] *People v Faucett,* 442 Mich 153, 157-158; 499 NW2d 764 (1993). Stated another way, "[t]he lawfulness of a search or seizure depends on its reasonableness." *Snider, supra* at 406. Our Supreme Court has explained that "[t]he reasonableness of a Fourth Amendment seizure balances the governmental interest that justifies the intrusion against an individual's right to be free of arbitrary police interference." *Faucett, supra* at 158.

In order for any police procedure to have constitutional search and seizure implications, a search or seizure must have taken place. US Const, Am IV; Const 1963, art 1, § 11; *United States v Mendenhall,* 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980) (opinion of Stewart, J.); see also *Florida v Royer,* 460 US 491, 498; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (plurality opinion). As the Sixth Circuit Court of Appeals explained, "[t]he safeguards of the Constitution, with respect to police/citizen contact, will vest only after the citizen has been seized." *United States v Richardson,* 949 F2d 851, 855 (CA 6, 1991). The Sixth Circuit Court of Appeals agreed that " 'voluntary

---

[5] The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

cooperation of a citizen in response to non-coercive questioning [raises no constitutional issues.]' " *Id.*, quoting *United States v Morgan*, 936 F2d 1561, 1566 (CA 10, 1991).

In *Terry v Ohio*, 392 US 1, 19, n 16; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the United States Supreme Court stated:

> Obviously, not all personal intercourse between police-men and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

Accord *Florida v Bostick*, 501 US 429, 434; 111 S Ct 2382; 115 L Ed 2d 389 (1991); *Mendenhall, supra* at 551-557. In *INS v Delgado*, 466 US 210, 215; 104 S Ct 1758; 80 L Ed 2d 247 (1984), the United States Supreme Court adopted the test for what constitutes a seizure that Justice Stewart articulated in *Mendenhall, supra* at 554, that being "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."[6] Accord *Florida v Rodriguez*, 469 US 1; 105 S Ct 308; 83 L Ed 2d 165 (1984); *People v Sasson*, 178 Mich App 257, 260-262; 443 NW2d 394 (1989); *People v*

---

[6] Specifically, the United States Supreme Court, quoting *Mendenhall, supra* at 554, stated:

> What has evolved from our cases is a determination that an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." [*Delgado, supra* at 215.]

*Daniels,* 160 Mich App 614, 617-620; 408 NW2d 398 (1987).

Here, the knock and talk procedure that the police utilized involved police officers initiating an ordinary citizen contact. The police action, i.e., approaching defendant as he was standing in his yard, did not amount to a seizure of defendant. The police simply identified themselves, told defendant they had been informed that he had controlled substances on his property, and asked defendant's permission to "look around." There is no indication that defendant was not free to end the encounter. Indeed, the testimony at the suppression hearing does not support the notion that defendant felt threatened or coerced. Thus, the initial contact with defendant did not have any constitutional implications on the basis of a seizure because there is no indication that any seizure of defendant occurred. Although we can envision a situation where the police conduct when executing the knock and talk procedure indicates an unreasonable seizure or results in an unreasonable search, the facts in the present record do not suggest such a situation.

Next, defendant argues that the trial court erred in concluding that defendant gave consent to search his pole barn.[7] In particular, defendant claims that his reasonable expectation did not encompass the type and location of search that the police carried out, that he was not given an opportunity to revoke his consent, and that to the extent he gave consent it was coerced.

---

[7] It is undisputed that the police were conducting a search without a warrant when they found the marijuana that defendant sought to suppress.

We review a trial court's findings of fact for clear error, giving deference to the trial court's resolution of factual issues. *People v Farrow*, 461 Mich 202, 208-209; 600 NW2d 634 (1999), quoting *People v Burrell*, 417 Mich 439, 448-449; 339 NW2d 403 (1983). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Swirles (After Remand)*, 218 Mich App 133, 136; 553 NW2d 357 (1996). We overstep our review function if we substitute our judgment for that of the trial court and make independent findings. *Farrow*, *supra* at 209. However, we review de novo the trial court's ultimate decision on a motion to suppress. *People v Williams*, 240 Mich App 316, 319; 614 NW2d 647 (2000).

With regard to consent, this Court has explained:

> While warrants are generally required before the police may conduct searches, Fourth Amendment rights are waivable and a defendant may always consent to a search of himself or his premises. [*People v*] *Goforth*, [222 Mich App 306,] 309[; 564 NW2d 526 (1997)]. A trial court must review the totality of the circumstances to decide if the consent to search was valid. *Id.* The trial court's decision regarding the validity of the consent to search is reviewed by this Court under a standard of clear error. *Id.* at 310.
>
> The consent exception to the warrant requirement allows a search and seizure when consent is unequivocal, specific, and freely and intelligently given. *People v Kaigler*, 368 Mich 281, 294; 118 NW2d 406 (1962); *People v Malone*, 180 Mich App 347, 355; 447 NW2d 157 (1989); see generally *Schneckloth v Bustamonte*, 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973). The validity of the consent depends on the totality of the circumstances. *Goforth*, *supra* at 309. [*People v Marsack*, 231 Mich App 364, 378; 586 NW2d 234 (1998).]

Also, consent may be limited in scope and may be revoked. *People v Powell*, 199 Mich App 492, 496-499; 502 NW2d 353 (1993). " 'The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect.' " *Mancik v Racing Comm'r*, 236 Mich App 423, 430; 600 NW2d 423 (1999), quoting *Florida v Jimeno*, 500 US 248, 251; 111 S Ct 1801; 114 L Ed 2d 297 (1991).

Here, the trial court addressed and resolved against defendant the issues he raises on appeal regarding the nature and extent of consent. The trial court found that defendant "both by his words and his actions explicitly and implicitly consented" to the search that the police conducted. Further, the trial court concluded that "[t]here was nothing in the description of the incident by any witness including defendant that [the] officers were coercive or demanding." The trial court also addressed whether defendant consented to the type and location of the search that the officers conducted. The trial court found that defendant placed no limitation on the scope of the search and that under the circumstances presented in this case, a "typical reasonable person" would understand that the police intended to search for controlled substances on defendant's premises in any place that the controlled substances might be found. Having examined the record in the present case, we find no clear error in the trial court's findings. *Farrow, supra.*

Finally, defendant raises for the first time on appeal his claim that the officers prevented him from having

the opportunity to revoke his consent, and thus it is unpreserved. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994); *People v Stacy*, 193 Mich App 19, 28; 484 NW2d 675 (1992). Having reviewed the record and the circumstances on which defendant relies, we find defendant's claim without merit. Defendant has not established outcome-determinative plain error. *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999).

Affirmed.