*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY KEITH REYES,

Defendant-Appellant.

UNPUBLISHED
June 12, 2026
12:31 PM

No. 372113
St. Clair Circuit Court
LC No. 23-001960-FH

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of delivery of methamphetamine, MCL 333.7401(2)(b)(*i*), and maintaining a drug house, MCL 333.7405(1)(d). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 8 to 50 years' imprisonment for the delivery conviction and 6 to 15 years' imprisonment for the maintaining-a-drug-house conviction. We affirm.

## I. FACTUAL BACKGROUND

This case arises from a St. Clair County Drug Task Force (DTF) investigation at a Baymont Inn in Port Huron, Michigan. Officer Brian Daly, who was conducting surveillance at the hotel, saw defendant repeatedly walk between the hotel and a car occupied by Stacey Dotts. After another officer inside the hotel heard defendant's name, Officer Daly identified defendant and Dotts through social media and the Law Enforcement Information Network (LEIN). A LEIN check showed that Dotts had an extraditable Idaho warrant and that defendant had a nonextraditable Idaho warrant involving methamphetamine-related conduct.

The next day, the DTF officers returned to the hotel, arrested Dotts, and detained defendant. Defendant admitted that he had methamphetamine in the pocket of a shirt, which was located near the driver's seat. When Officer Daly asked whether more methamphetamine could be in the suitcases or trunk, defendant said that he did not know and told the officers, "You guys can go look." Officers recovered approximately one gram of methamphetamine from the driver's side of the car, pipes from inside the car, and a safe from the trunk. The safe contained approximately 7.3 grams of methamphetamine, a scale, and packaging material.

-1-

Before trial, defendant objected to Officer Daniel Stocker's proposed expert testimony regarding local narcotics trafficking. After a *Daubert*[1] hearing, the trial court qualified Officer Stocker as an expert in local drug trafficking in St. Clair County. At trial, Dotts testified that defendant brought the safe into the hotel room, supplied methamphetamine to both of them, and later sold methamphetamine to obtain money for another night at the hotel. Defendant testified to the contrary, asserting that he was only a user, that Dotts supplied the methamphetamine, and that he did not know about the safe or its contents. The jury convicted defendant as charged.

At sentencing, the trial court invited defendant to allocute but repeatedly interrupted and questioned him when he attempted to discuss recent deaths in his family and his claimed lack of intent to commit crimes in Michigan. Defendant later moved in the trial court for a new trial or a *Ginther*[2] hearing, arguing that counsel was ineffective for failing to properly object to Officer Stocker's testimony, call a rebuttal expert, and move to suppress evidence under the Fourth Amendment. The trial court denied relief. Defendant then moved for remand in this Court, raising the same expert-related ineffective-assistance claims and an allocution claim. This Court denied the motion without prejudice.[3] We now address defendant's claims on direct appeal.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant claims there was insufficient evidence to support his conviction of maintaining a drug house. We disagree.

This Court reviews de novo both a challenge to the sufficiency of the evidence and issues of statutory interpretation. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019); *People v Hieu Van Hoang*, 328 Mich App 45, 54-55; 935 NW2d 396 (2019). In reviewing a sufficiency challenge, "this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." People v Reese, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). The prosecution need not disprove every theory of innocence, *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018), and "[a] factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense," *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001). This Court will not interfere with the jury's role in deciding witness credibility, weighing evidence, and determining what

---

[1] *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Reyes*, unpublished order of the Court of Appeals, entered September 25, 2025 (Docket No. 372113).

inferences may fairly be drawn from the evidence. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002); *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

MCL 333.7405(1)(d) states that a person "shall not":

(d) Knowingly keep or maintain a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances or that is used for keeping or selling controlled substances in violation of this article.

To establish that defendant maintained a drug house on the basis of Dotts's car, the prosecution had to prove that defendant knowingly kept or maintained the car and made it available for the purpose of using, keeping, or selling methamphetamine. *People v Thompson*, 477 Mich 146, 152-156; 730 NW2d 708 (2007); MCL 333.7405(1)(d). The phrase "keep or maintain" requires "usage with some degree of continuity," which may be shown by repeated acts or by circumstantial evidence that supports the same inference. *Thompson*, 477 Mich at 155. A defendant may keep or maintain property if he has the ability to exercise control or management over it. *People v Bartlett*, 231 Mich App 139, 152; 585 NW2d 341 (1998). Our Supreme Court has likewise explained that the property does not need to be used exclusively for controlled substances. However, the drug-related use "must be a substantial purpose of the users of the property, and the use must be continuous to some degree; incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity will not suffice." *Thompson*, 477 Mich at 156, quoting *Dawson v State*, 894 P2d 672, 678-679 (Alas App, 1995).

Viewed most favorably to the prosecution, the evidence permitted the jury to find the required degree of continuity. Dotts owned the car, but she testified that defendant regularly drove it and that both of them kept belongings in it. Dotts also testified that defendant had access to the safe, brought it into the hotel room, and supplied methamphetamine from it. Officers then found the safe in the trunk with methamphetamine, a scale, and packaging material. Defendant himself testified that he intended to drive Dotts to Washington, supporting a reasonable inference that the car was not merely an incidental or momentary storage location, but was being used to transport defendant, Dotts, their belongings, and the safe containing methamphetamine. On that record, a rational juror could find that defendant knowingly kept or maintained the car for keeping methamphetamine. *Thompson*, 477 Mich at 156.

The record also contained evidence supporting the remaining statutory theories. Officers found pipes in the car, and Dotts testified that she and defendant used pipes to smoke methamphetamine. Dotts further testified that defendant sold methamphetamine to obtain money for a hotel room. Officers also found methamphetamine, a scale, and packaging material in a safe in the trunk of the car. See *People v Wolfe*, 440 Mich 508, 524; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992) ("Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest."). Defendant's sufficiency challenge therefore fails.

B. FOURTH AMENDMENT CHALLENGES

Defendant next argues that officers violated the Fourth Amendment by opening the safe, using his Idaho warrant as a pretext to investigate drug trafficking, surveilling him in a high-crime area, and failing to account for greater protection under Const 1963, art 1, § 11. We disagree.

Defendant did not preserve his Fourth Amendment challenges by objecting to the admission of the evidence at trial on the same grounds he now raises. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."). Therefore, our review is for plain error affecting defendant's substantial rights. *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant bears the burden of showing prejudice, *id*., and reversal is warranted "only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings," *People v Clark*, 315 Mich App 219, 224; 888 NW2d 309 (2016).

The United States and Michigan Constitutions protect against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional." *People v Barbarich (On Remand)*, 291 Mich App 468, 472; 807 NW2d 56 (2011). To justify a warrantless search, the police must show "either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *People v Vaughn*, 344 Mich App 539, 552; 1 NW3d 414 (2022) (quotation marks and citation omitted). Consent is one such exception if it "is unequivocal, specific, and freely and intelligently given." *People v Rodriguez*, 327 Mich App 573, 584; 935 NW2d 51 (2019) (quotation marks and citation omitted).

1. EVIDENCE OBTAINED WITHOUT A WARRANT

Defendant has not shown plain error arising from the search of the safe. Defendant first agreed that officers could retrieve the shirt containing methamphetamine. Officer Daly then asked whether additional methamphetamine could be in the back of the car, including the suitcases or trunk, and defendant responded, "You guys can go look." Under the circumstances, the scope of defendant's consent objectively included containers in the car that could contain methamphetamine. See *People v Dagwan*, 269 Mich App 338, 343-344; 711 NW2d 386 (2005). Further, defendant knew the officers were looking for methamphetamine. Officer Daly's questions specifically referred to areas and items in the back of the car, and defendant did not limit his consent. *People v Mead*, 503 Mich 205; 931 NW2d 557 (2019), does not compel a different result because this case involves defendant's own consent to search a car he regularly drove and a safe over which Dotts testified defendant exercised control. Defendant therefore has not shown that opening the safe was plain error.

## 2. OUT-OF-STATE WARRANT

Defendant also has not shown that his detention was unlawful. "The Fourth Amendment search and seizure protections also apply to brief investigative detentions." *People v Steele*, 292 Mich App 308, 314; 806 NW2d 753 (2011). Such a detention is lawful if officers have an objectively reasonable, particularized suspicion that the person being detained is engaged in wrongdoing. *Terry v Ohio*, 392 US 1, 21-22; 88 S Ct 1868; 20 L Ed 2d 889 (1968); *People v Prude*, 513 Mich 377, 386-387; 15 NW3d 249 (2024). The DTF did not detain defendant merely because of his nonextraditable Idaho warrant. Instead, officers knew that defendant had been staying at a hotel associated with narcotics trafficking and had repeatedly moved between the hotel and the car. They also knew that Dotts had an extraditable warrant and that defendant had an outstanding warrant. Those facts, viewed together, supplied reasonable suspicion to briefly detain defendant while the officers investigated.

## 3. REASONABLE EXPECTATION OF PRIVACY

The pre-detention investigation itself likewise did not constitute an unconstitutional search or seizure. "In order for any police procedure to have constitutional search and seizure implications, a search or seizure must have taken place." *People v Frohriep*, 247 Mich App 692, 699; 637 NW2d 562 (2001). Defendant was not seized when officers observed him in public, heard his name inside the hotel, searched public sources, or checked LEIN. See *People v Bolduc*, 263 Mich App 430, 438; 688 NW2d 316 (2004). Because the challenged pre-detention conduct did not amount to a search or seizure, defendant has not established a Fourth Amendment violation. *Frohriep*, 247 Mich App at 699. Consequently, defendant cannot establish an error occurred. *Carines*, 460 Mich at 763.

## 4. STATE CONSTITUTIONAL PROTECTIONS

Finally, defendant has not identified a compelling reason to interpret Const 1963, art 1, § 11 more broadly on these facts. "Michigan's constitutional prohibition against unreasonable searches and seizures is to be construed to provide the same protection as that secured by the Fourth Amendment of the United States Constitution, absent compelling reason to impose a different interpretation." *Bolduc*, 263 Mich App at 437 n 9. Defendant's state-constitutional argument rests on the same factual premise as his Fourth Amendment argument and does not identify a Michigan-specific rule that would alter the result. Accordingly, defendant has not shown plain error. *Carines*, 460 Mich at 763.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel because trial counsel failed to properly challenge the prosecution's expert testimony, failed to call a rebuttal expert, and failed to move to suppress evidence obtained during the search of the vehicle. We disagree.

Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews the trial court's factual findings for clear error and constitutional questions de novo. *Id.* "[A] trial court's factual findings . . . cannot be disturbed unless the reviewing court is left

with a definite and firm conviction that the trial court made a mistake." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted). However, "because no *Ginther* hearing was held, our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To establish ineffective assistance, a defendant must show that defense counsel's performance was objectively unreasonable and that, but for counsel's deficient performance, a different result was reasonably probable. *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010); *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). A defendant must overcome the strong presumption that counsel's decisions reflected sound trial strategy and bears the burden of establishing the factual predicate for the claim. *Armstrong*, 490 Mich at 289-290; *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

## 1. EXPERT TESTIMONY

Defendant first contends that counsel was ineffective for failing to cite *People v Kowalski*, 492 Mich 106; 821 NW2d 14 (2012), when objecting to Officer Stocker's expert testimony. *Kowalski* explains that proposed expert testimony "(1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *Id*. at 120; MRE 702. Counsel objected that Officer Stocker's testimony lacked sufficient data and methodology, and the trial court held a *Daubert* hearing on that objection. Counsel therefore was not ineffective merely because he did not cite *Kowalski* by name.

Defendant's stronger point is that counsel should have objected to Officer Stocker's testimony on relevance grounds. Officer Stocker's expertise was limited to local drug trends in St. Clair County, and he testified that his opinions were based on conversations with local users, dealers, informants, and officers. Defendant, however, was not local: he was from Washington and had an Idaho warrant. The felony information in this matter indicated that defendant had an Idaho address. Defendant also told Officer Daly that he had no connection to St. Clair County. To the extent Officer Stocker testified that local users ordinarily possess less than a gram of methamphetamine and that local users do not possess scales, counsel had a viable relevance objection because those local-use patterns did not necessarily make defendant's intent more or less probable. See MRE 401; MRE 402; *Kowalski*, 492 Mich at 122.

But even assuming counsel performed deficiently by failing to object on that basis, defendant has not shown prejudice. The prosecution's proof that defendant intended to deliver methamphetamine did not depend on Officer Stocker's testimony. Officers found approximately 7.3 grams of methamphetamine, a scale, and packaging material in the safe. Dotts testified that defendant sold methamphetamine to obtain money for the hotel room. Those facts provided substantial circumstantial evidence of intent to deliver independent of any expert testimony. See *Wolfe*, 440 Mich at 524. Thus, defendant has not shown a reasonable probability of a different outcome, and his ineffective-assistance claim fails. *Fyda*, 288 Mich App at 450; *Armstrong*, 490 Mich at 290.

-6-

## 2. REBUTTAL EXPERT WITNESS

Defendant next argues that counsel was ineffective for failing to investigate and call a rebuttal expert. "Defense counsel's failure to investigate and attempt to secure a suitable expert witness to assist in preparing the defense may constitute ineffective assistance." *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018). But counsel is not required in every case to present "an equal and opposite expert." *Id*. (quotation marks and citation omitted). Decisions regarding what witnesses to call are presumed to be matters of trial strategy. *Putman*, 309 Mich App at 248.

Based on the record available to this Court, defense counsel's strategy was reasonable. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Carll*, 322 Mich App at 702 (quotation marks and citation omitted). Here, defense counsel cross-examined Officer Stocker about the limits of his experience, the short time he had been with the DTF, and his lack of scientific records or logs. Counsel could reasonably choose to attack Officer Stocker's methodology rather than answer one anecdotal opinion with another. Counsel's strategy was not deficient simply because it did not succeed. *Matuszak*, 263 Mich App at 61. And for the same reasons already discussed, defendant has not shown a reasonable probability that a rebuttal expert would have changed the verdict.

## 3. MOTION TO SUPPRESS

Defendant claims defense counsel was ineffective for failing to move to suppress the evidence collected from his detention and search of Dotts's car. As discussed, defendant's Fourth Amendment claims lack merit because: (1) defendant consented to the search of the car and was aware of the containers inside; (2) there was sufficient evidence to support a reasonable suspicion defendant was engaged in illegal activity, justifying the DTF members detaining him; (3) defendant was not seized while the DTF investigated him, thus not implicating the Fourth Amendment; and (4) the Michigan Constitution provides the same protections as the Fourth Amendment, and defendant fails to explain why the protections under the Michigan Constitution should be expanded in his case. Defense counsel is not ineffective for failing to make a meritless motion. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.").

## 4. NEW TRIAL

For the first time, defendant claims the trial court erred when it denied his motion for a new trial or *Ginther* hearing. An issue not presented in the statement of questions presented is deemed waived. *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011). Defendant did not challenge the trial court's decision on his motion for a new trial or *Ginther* hearing in his statement of questions presented, waiving the issue. *Id*.

## D. ALLOCUTION

Defendant next argues that the trial court deprived him of a meaningful opportunity to allocute before imposing sentence. We disagree.

Defendant did not object to the trial court interrupting his allocution or file a subsequent motion for resentencing. As such, this issue is not preserved. See *Clark*, 315 Mich App at 223-224 ("To preserve a sentencing issue for appeal, a defendant must raise the issue 'at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.' "); *People v Bailey*, 330 Mich App 41, 66; 944 NW2d 370 (2019) (stating that a defendant must object at the sentencing hearing regarding the right to allocute to preserve the issue for review). Accordingly, our review is for plain error affecting defendant's substantial rights. See *People v McLaughlin*, 258 Mich App 635, 670; 672 NW2d 860 (2003) ("[T]his Court has decided that even an unpreserved sentencing error can be reviewed under the plain error rule of [*Carines*].").

Before imposing sentence, the trial court must personally address the defendant and permit the defendant "to speak or present any information to mitigate the sentence." MCR 6.425(D)(1)(c)(*ii*). The right of allocution allows a defendant "to speak in mitigation, to accept responsibility, and to begin atonement." *People v Bailey*, 330 Mich App 41, 66; 944 NW2d 370 (2019). A single interruption, or a clarifying question, does not necessarily deprive a defendant of allocution. *People v Dixon-Bey*, 340 Mich App 292, 302; 985 NW2d 904 (2022). The question is whether the court allowed the defendant a meaningful opportunity to address the court before sentence was imposed. See *id*. at 302-303.

During allocution in this matter, the following exchange occurred:

> *The Defendant*: Your Honor, I just I know [sic] I've done some horrible things in my life, but I mean I am going through a lot right now as well. I got family that's just passing away. I had one, you know, a cousin that just passed away before Christmas, and then my grandpa just passed away last weekend. And then—

> *The Court*: What, I'm sorry what about your grandpa?

> *The Defendant*: He just passed away on Saturday. Last, not this—I mean last Saturday following—

> *The Court*: You mean while you've been incarcerated?

> *The Defendant*: Yes.

> *The Court*: You mean since, since the jury found you guilty?

> *The Defendant*: Yes.

> *The Court*: Why should I consider this?

> *The Defendant*: It's up to you, Your Honor.

> *The Court*: I mean.

> *The Defendant*: It is your courtroom and, you know, it's—

*The Court*: I'll be honest with you, you were convicted of—I want to know why—what you feel about how you should be sentenced for the crime of, which crimes for which [sic] you've been convicted.

Now, I'm not really making a connection between that and your grandfather passing while you're incarcerated. Maybe you can make it (indiscernible) [sic] for me, but I don't see I honestly [sic] don't see what one has to do with the other. That's what I'm struggling with.

Go ahead.

*The Defendant*: Okay. Well, for one, my intentions weren't to come over here and commit these crimes.

*The Court*: But you did.

*The Defendant*: Speculatively. One can speculate, Your Honor.

*The Court*: The jury made that finding.

*The Defendant*: The jury is a liar.

*The Court*: Okay. Well, that tells me everything I need to know.

*The Defendant*: I'm going to come back on appeal anyways, so.

*The Court*: Tells me everything I need to know. Thank you very much.

*The Defendant*: Sure.

*The Court*: Obviously, you have very little respect for the jury's verdict, and that's unfortunate.

*The Defendant*: You have no respect for the law. I am appealing this.

*The Court*: That's your right, sir.

The trial court afforded defendant an opportunity to allocute. *Dixon-Bey*, 340 Mich App at 302. Rather than offer any meaningful statement, defendant responded indignantly, belittling both the jury's verdict and the court. His remarks and his interaction with the court were telling: they reflected a lack of respect for the criminal process, the solemnity of the proceedings, and the roles of the court and the jury. Having reviewed the full exchange, we discern no basis to disturb the trial court's assessment of defendant's statements. Defendant has therefore failed to establish

a clear or obvious error under MCR 6.425(D)(1)(c)(ii). See *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018). Accordingly, defendant is not entitled to resentencing.[4]

Affirmed.

/s/ Mariam S. Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

---

[4] Defendant also argues that resentencing should occur before a different judge. As we have determined above, defendant is not entitled to resentencing. This issue is moot. See *People v Smith*, 502 Mich 624, 631; 918 NW2d 718 (2018). ("A dispute is moot if no controversy exists and any judgment on the matter would lack practical legal effect.").

-10-